was made to three for their lives, and upon the death of one of them the Lord claimed a heriot. The jury find, that the custom of the manor did not warrant a grant of an estate for three lives; which by the strongest necessary inference was finding a heriot was not due, for they found the grant void. But the court decided it must be expressly found.

The case of length of possession, from which a jury may and ought to presume a deed, if found in a special verdict, would not warrant the court in intending the fact that there was a deed.

I am of opinion that the verdict is insufficient. But it is proper that a *venire facias de novo* should issue.

DUVALL, J. having been counsel for the petitioner gave no opinion.

On motion of the petitioner's counsel, the court directed the following entry to be made on the record: "That "the fact that *Joice* was in England is not sufficiently and "expressly found in the special verdict; and for as much "as there was sufficient evidence disclosed at the trial "by which the jury might have found the fact expressly, "the court order a *venire facias de novo*."

———— ❧ ————

## GENERAL COURT, OCTOBER TERM, 1798.

### NEGRO HARRY *vs.* LYLES.

APPEAL from Prince George's county court, *dismissing* the appellant's petition for *freedom*.

At the trial in the county court the following *bills of exceptions* were taken:

1. The petitioner offered evidence to the jury to prove, that in 1790 he was brought into the *state of Maryland* by the defendant, from the *commonwealth of Virginia*. To rebut this evidence, the defendant offered evidence to the jury to prove, that he the defendant, being a citizen of *Virginia*, did in the year 1790 remove into the *state of Maryland* into Prince George's county, with a *bona fide* intention of settling therein; that he hath ever since until this time actually resided in the said *state of Maryland;* that at the time of his removal into *Maryland*, in manner aforesaid, to wit, in 1790, he brought with him the petitioner, together with others, his proper slaves, from *Virginia*; that the petitioner before and at the time of his removal from *Virginia* in manner aforesaid, was the slave of the defendant, and that the petitioner had resided in *Virginia* for three whole years antecedent to his being re-

Oct. 1798.

Negro Harry
vs.
Lyles.

moved and brought into *Maryland* in manner aforesaid. The defendant also offered evidence to the jury to prove, that upon his removal into *Maryland* in manner aforesaid, to wit, in 1790, he the said defendant, by his own oath, fully proved to the satisfaction of the collector of the tax for Prince George's county, that the said petitioner had been an inhabitant of some one of the *United States*, to wit, of *Virginia*, for the space of three whole years next preceding his importation into *Maryland* in manner aforesaid. And it was admitted by the counsel for the defendant, that he the defendant did not reside in *Maryland* for one year antecedent to his importing the petitioner into *Maryland* in manner aforesaid.

Whereupon the petitioner, by his counsel, prayed the opinion of the court, and their direction to the jury, that the residence of the defendant in *Maryland* for one whole year next *succeeding* his importation of the petitioner into the said state, is not a sufficient compliance with the proviso contained in the first clause of the act of assembly of 1783, entitled, "*An act to prohibit the bringing of slaves into this state;*" and that for want of the residence of the defendant for one year *prior* to the importation aforesaid, the petitioner did cease to be a slave, and became free; and that therefore the petitioner is free, and that a verdict ought to be found for him. Which direction the court [*Stone, Ch. J.*] refused to give; but was of opinion, and did so direct the jury, that it was not necessary for the defendant to have resided one year in the *state of Maryland antecedent* to his importing the petitioner into the state of *Maryland*, in order to bring him the defendant within the said proviso of the act of assembly aforesaid. The petitioner by his counsel excepted, &c.

2. The defendant having produced and sworn *Robert Bowie* to give evidence in this cause, put into his hands, to refresh his memory, a paper written and signed by the said *Bowie*, in the words following, to wit: "This day "came *William Lyles*, before me, *Robert Bowie*, one of "the collectors of the tax for the state of *Maryland*, and "made oath on the Holy Evangely of Almighty God, "that he the said *Lyles* is about to remove from the *state of "Virginia*, and to become a resident of the *State of Ma- "ryland*, for at least one year; and that the said *Lyles* "did not bring or mean to bring with him any slave or "slaves, other than was conformable to the act of assem- "bly made to prevent the further importation of slaves "into this state; and in every respect fully complied with "the said act. Given under my hand this 6th day of "April 1790.          "ROBERT BOWIE."

IT being admitted that the said *Robert Bowie*, on the day on which the said certificate bears date, and at the

time of the importation of the said petitioner, was collector of the tax for Prince George's county, and that the defendant removed the petitioner from *Virginia* into the said county of Prince George's in *Maryland.*

The defendant then offered to prove by the said *Bowie,* that the defendant did, upon the day on which the said certificate bears date, fully prove by his own oath, to the satisfaction of the said *Bowie,* that the petitioner had been an inhabitant of some one of the United States, to wit, of the commonwealth of *Virginia,* for the space of three whole years next preceding the importation of the said petitioner into the *state of Maryland* by the defendant.

The petitioner, by his counsel, then produced and read to the court the said certificate, and objected to the offering the *oral evidence* of the said *Bowie* for the purpose aforesaid; and prayed the court that the said evidence might not be admitted to go to the jury.

But the Court [*Stone, Ch. J.*] overruled the said objection, and did admit the said *Bowie* to be examined to prove the facts above stated.—The petitioner by his counsel excepted, &c.

The verdict and judgment being for the defendant, the petitioner appealed to this court.

THE GENERAL COURT *affirmed* the judgment of the County Court; and the appellant appealed to the Court of Appeals, where the judgment of affirmance was *affirmed* at June term 1800.

*Kilty,* for appellant.

*Key, Mason and Shaaff,* for appellee.

See *Negro Plato* vs. *Bainbridge,* October 1799.

### GENERAL COURT, OCTOBER TERM, 1798.

GORDEN *et al.* vs. HICKMAN's Administratrix.

APPEAL from Montgomery county court. It was an action of *assumpsit,* and the declaration contained one count, "for *sundry matters,* properly chargeable in an account, as by a particular account," &c. The defendant, the now appellee, pleaded *plene administravit.* At the trial the plaintiffs offered to read their *books of accounts,* containing the account against the defendant referred to in the declaration, and offered to read the *probates* by the agent of the plaintiffs, written in the said books, taken before and signed by *William Deakins, junior,* and *David Lynn,* stating that they were justices of the peace of Frederick county, which county at that time (1774 & 1775,) included what is now Montgomery county. It was admitted